IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEBORAH K. MITCHELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | NO. CIV-05-1011-HE |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner, Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff Deborah K. Mitchell brought this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the Social Security Administration denying her application for supplemental security income benefits. Consistent with 28 U.S.C. § 636(b)(1)(B), the case was referred to Magistrate Judge Gary M. Purcell, who submitted his Report and Recommendation, finding that the Administrative Law Judge ("ALJ") erred in his credibility analysis and recommending that the case be reversed and remanded for further administrative proceedings.

The parties, by failing to object to the Report and Recommendation, waived their right to review of the factual and legal issues it addressed. United States v. One Parcel of Real Property, 73 F.3d 1057, 1059-60 (10th Cir. 1996). See 28 U.S.C. § 636(b)(1)(C); LCvR72.1(a). For this reason, and for the reasons contained in the Report and Recommendation, the court concludes this case should be reversed and remanded for further administrative proceedings.

Accordingly, the Report and Recommendation is **ADOPTED**. This case is reversed and remanded for further administrative proceedings consistent with Magistrate Judge Purcell's Report and Recommendation, a copy of which is appended to this order.

**IT IS SO ORDERED.**

Dated this 11TH day of September, 2006.

```
                      /s/ Joe Heaton
                      JOE HEATON
                      UNITED STATES DISTRICT JUDGE
```

IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DEBORAH K. MITCHELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-05-1011-HE |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and both parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be reversed and remanded for further administrative proceedings.

1

I. Background

Plaintiff filed her application for benefits on October 23, 2000 (protective filing date), alleging that she became disabled on August 23, 1999, due to Hepatitis B and C viral infections and "heart problems." (TR 61-63, 83). Plaintiff described previous work as a delivery driver, bookkeeper, cashier/stocker, and restaurant cashier. (TR 71, 117). Plaintiff's application was administratively denied. (TR 29, 30). At Plaintiff's request, a *de novo* hearing was conducted before Administrative Law Judge Keltch ("ALJ") on April 27, 2002, at which Plaintiff, a medical expert ("ME"), and a vocational expert ("VE") testified. At her hearing, Plaintiff testified that she was 59 years old, had completed the eighth grade, could read and write, had obtained vocational training as a manicurist, and last worked in a restaurant but could no longer work because of fatigue. (TR 335-337).

The ME summarized the medical record and testified that Plaintiff tested positive for the hepatitis B and C viral infections in August 1999, that she had an episode of atrial fibrillation in August 1999, that electrocardiogram testing in September 2000 was normal, that Plaintiff recovered from the hepatitis B infection, that she underwent treatment for the hepatitis C infection by Dr. Hale which controlled the infection, that she had heart palpitations not related to a cardiac problem, that she did not meet the agency's listing for hepatic impairments, and that her treating doctor's statement concerning her medical condition and ability to work was not supported by the objective medical evidence in the record. (TR 337-344). The ME further testified that proper treatment for a hepatitis C infection would involve the medication Interferon, usually for a six-month period, and not the steroid injections that

2

Plaintiff received over a two-year period. (TR 348). Plaintiff testified that she could not afford the Interferon treatment and that she continued with the same course of treatment by her treating physician, Dr. Hale. (TR 349). Plaintiff stated that she was very weak and only left her house to visit her doctor once a week, that she was often confused and her vision was blurry, that she had more energy after receiving a steroid injection but experienced "brain fog" that decreased her ability to concentrate and focus, that she was depressed and took anti-depressant medication, that she experienced heart palpitations two or three times a day, that the heart palpitations resolved with anti-anxiety medication, that she could not afford to see a heart specialist, that she took beta blocker medication, and that she experienced headaches almost every day. (TR 350-358). Plaintiff estimated she could walk 50 feet, stand for 20 minutes, lift 10 to 15 pounds, and that she spent most of her time sitting. (TR 358-359). Plaintiff testified she could do housework and care for herself, that her son grocery shopped for her, and that she had not sought treatment for depression. (TR 359-362).

The VE testified concerning the vocational characteristics of Plaintiff's previous jobs, including the skills obtained in these jobs that would be transferable to other work, and testified as to the availability of jobs for a hypothetical individual who could perform work at the sedentary exertional level. (TR 363-367). However, the VE testified that there would be more than a little vocational adjustment needed for a person with Plaintiff's vocational characteristics to perform these sedentary jobs. (TR 367).

The ALJ subsequently issued a decision in which the ALJ found that Plaintiff has severe impairments due to hepatitis C infection and arthritis. Despite these impairments, the

3

ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform the exertional requirements of light work. Based on this RFC for work and Plaintiff's and the VE's statements concerning the exertional demands of her previous work, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act because she has the ability to perform her previous job as a cashier in a restaurant or liquor store setting. (TR 15-19). Plaintiff's request for review of the decision by the Appeals Council was denied. (TR 5-8). Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination.

II. Standard of Review

Judicial review of this appeal is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991). The court will look to the record as a whole to determine whether the evidence which supports the Commissioner's decision is substantial in light of any contradicting evidence. Nieto v. Heckler, 750 F.2d 59, 61 (10th Cir. 1984); Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983)(per curiam). If the Commissioner fails to apply the correct legal standard or substantial evidence does not support the Commissioner's decision, the court may reverse the Commissioner's findings. Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir. 1984)(per curiam). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992). To find that the Commissioner's decision is supported by substantial evidence in the record, there must be

4

sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion. Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir. 1988).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. § 416.920(b)-(f) (2005); see also Williams v. Bowen, 844 F.2d 748, 750-752 (10th Cir. 1988)(describing five steps in detail). The claimant bears the initial burden of proving that she has one or more severe impairments. 20 C.F.R. § 416.912 (2005); Turner v. Heckler, 754 F.2d 326, 328 (10th Cir. 1985). Where the plaintiff makes a *prima facie* showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show "the claimant retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy." Turner v. Heckler, 754 F.2d at 328; Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

III. Treating Physician's Opinion

Plaintiff contends that the ALJ erred in rejecting the opinion of her treating physician, Dr. Hale, that she is disabled. Defendant Commissioner responds that the ALJ provided adequate reasons, which are supported by the record, for rejecting Dr. Hale's opinion.

The medical record reflects that Plaintiff sought medical treatment from Dr. Hale, a general practitioner, beginning in July 2000. (TR 198, 343). Plaintiff complained of

5

weakness, lethargy, a previous seizure, a history of diagnosis of hepatitis B and C infections, and a previous ultrasound showing a mild fatty liver. (TR 198). In August 2000, Dr. Hale noted that Plaintiff "feels good" and "strong" and that her liver was not enlarged. (TR 196). The treatment provided by Dr. Hale consisted of injections of a steroid medication. (TR 196). Dr. Hale noted in August 2000 that Plaintiff had "shown remarkable improvement" from a clinical standpoint and that she was doing "remarkably well on the steroid therapy." (TR 195, 196). By September 2000, Dr. Hale noted that Plaintiff's liver function tests were normal, that Plaintiff was "doing marvelous," and that she felt "great." (TR 194). Dr. Hale continued to provide steroid medication injections to Plaintiff until March 2001, when he noted that he had taken her off of the steroids and recommended a treatment regimen of Alpha Interferon medication but that Plaintiff refused this treatment and the physician relented and gave her another steroid medication injection. (TR 187). In April 2001, Dr. Hale again noted that he advised Plaintiff to discontinue the steroid medication and that she agreed. (TR 186). Although Dr. Hale continued the steroid medication injections, he noted again in May 2001 that "I really don't like to continue this. I have told her this. We are going to think about getting off of this medication completely." (TR 270). However, Plaintiff refused any other treatment. (TR 268, 269). By July 2001, Dr. Hale noted that Plaintiff's hepatitis C infection was in remission. (TR 266). He reduced the amount of the steroid medication and continued to note that Plaintiff was doing "remarkably well." (TR 266). Dr. Hale noted in September 2001 that the continuation of the steroid medication injections was a "homeopathic" treatment which was not medically helping Plaintiff. (TR 263). In October 2001, Dr. Hale noted that

Plaintiff was depressed but that her depression could be related to her failure to follow the hormone replacement therapy he prescribed for her. (TR 262). Dr. Hale also noted in October 2001 that he had taken Plaintiff off of the steroid medication and she was "very active" and having "a good week." (TR 261). Plaintiff again refused to consider a different medication for her hepatitis C infection in December 2001 even though her liver function tests were "climb[ing.]" (TR 259). Plaintiff reportedly stated she "felt 100 % better" in January 2002. (TR 258). Dr. Hale noted that he was giving her only "a homeopathic dose" of steroid medication in January 2002, and that the medication was providing only a "psychogenic effect" but that he had no problem with continuing the injections "as long as she is feeling good and maintaining stability." (TR 257). In January 2002, Dr. Hale also noted that Plaintiff has degenerative cervical arthritis, for which he injected her neck with anti-inflammatory and pain medication. (TR 256). Dr. Hale noted he prescribed anti-depressant medication for Plaintiff in February 2002 after she reported marked lethargy, weakness, and depression. (TR 251). Plaintiff was reportedly doing "remarkably well" and "starting to feel better" in March 2002. (TR 253). Dr. Hale again noted in May 2002 that clinically Plaintiff was "doing quite well." (TR 252). Plaintiff was reportedly doing "remarkably well" and was "not nearly as depressed" in May 2002. (TR 250). Dr. Hale noted Plaintiff did not need further steroid medication injections, and in June 2002 Dr. Hale noted that her hepatitis C infection was "under excellent control" and her depression had "pretty well abated." (TR 250). Dr. Hale again noted in July 2002 that the steroid medication injections were providing only a psychological benefit to Plaintiff and that he did not need to see Plaintiff weekly although he

believed she derived some emotional benefit from the weekly visits. (TR 248). Dr. Hale's notes indicate further weekly office visits by Plaintiff in 2002 and 2003 although he did not indicate any significant objective findings other than some joint pain and "migratory polyarthralgia." (TR 241-242).

In February 2002, Dr. Hale authored a letter in which the physician stated that he had treated Plaintiff for several years for chronic hepatitis C infection causing "persistent nausea, vomiting and intermittent abdominal pain" and "marked lethargy and weakness, fatigability, and an inability to do exertional activities for any period of time." (TR 237). Dr. Hale opined that Plaintiff was "unable to maintain a regular schedule of work 5 days a week or 8 hours a day in any capacity." (TR 237). In March 2003, Dr. Hale authored a second letter in which he stated that he had treated Plaintiff for several years for hepatitis C infection, causing "lethargy, weakness, fatigability, and joint pain" and that the joint pain was "rather acute and severe" and "most likely a primary osteoarthritis." (TR 239). He opined that Plaintiff was "totally and permanently disabled." (TR 239).

The prevailing standard for reviewing Plaintiff's claim that the ALJ erred in rejecting her treating physician's opinions requires the Commissioner to determine what weight to give the medical opinions. "Generally, the ALJ must give controlling weight to a treating physician's well-supported opinion about the nature and severity of a claimant's impairments." Adams v. Chater, 93 F.3d 712, 714 (10th Cir. 1996). Thus, the ALJ "must first consider whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003)

8

(quoting SSR 96-2p, 1996 WL 374188, at *2). "If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record....[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id. Even if the treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §404.1527 and 416.927." Id. (quotation omitted). "Under the regulations, the agency rulings, and [precedential] case law, an ALJ must give good reasons ... for the weight assigned to a treating physician's opinion" that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." Id. at 1300 (quotations omitted).

A treating physician's opinion may be rejected if it is inconsistent with other medical evidence. Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994). See Kemp v. Bowen, 816 F.2d 1469, 1476 (10th Cir. 1987)("The treating physician rule governs the weight to be accorded the medical opinion of the physician who treated the claimant ... relative to other medical evidence before the factfinder, including opinions of other physicians.")(quotation omitted). However, "[i]f the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

In Plaintiff's case, the ALJ rejected the two letter opinions authored by Dr. Hale. The ALJ stated reasons in his decision for rejecting the opinions, and those reasons are well

9

supported by the record. (TR 16-17). The ALJ reasoned that Dr. Hale's own treating and progress notes were inconsistent with the opinions and instead indicated "substantial periods of remission and significant improvement." (TR 17). The ALJ also referred to objective medical evidence, including liver function tests, and reasoned that "the longitudinal picture reflects extended periods of normal chemistry and exertional capacity." (TR 17). Finally, the ALJ relied on the testimony of the ME that the objective medical evidence did not support the treating physician's opinions. (TR 17). These reasons are supported by the evidence in the record, and therefore no error occurred with respect to the ALJ's rejection of Dr. Hale's opinions that Plaintiff is disabled.

IV. Credibility

In her remaining argument, Plaintiff contends that the ALJ erred at the fourth step of the requisite sequential evaluation procedure. Plaintiff contends that the ALJ's analysis of the issue of Plaintiff's credibility consisted entirely of boilerplate language and a conclusion which discounted the credibility of Plaintiff's subjective statements without any reference to specific medical evidence or authority. Defendant responds that the ALJ properly discounted the credibility of Plaintiff's subjective statements and that no error occurred in this regard.

At the fourth step of the evaluation process required of administrative factfinders, the ALJ is required to determine whether the claimant retains the RFC to perform the requirements of her past relevant work or other work that exists in significant numbers in the economy. At step four, the claimant bears the burden of proving her inability to perform the duties of her past relevant work. See Andrade v. Secretary of Health & Human Servs., 985

10

F.2d 1045, 1051 (10th Cir. 1993). At this step, the ALJ must "make findings regarding 1) the individual's [RFC], 2) the physical and mental demands of prior jobs or occupations, and 3) the ability of the individual to return to the past occupation, given his or her [RFC]." Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir. 1993). The assessment of a claimant's RFC necessarily requires a determination by the ALJ of the credibility of the claimant's subjective statements. "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)(footnote omitted).

The ALJ's decision reflects the following discussion concerning the credibility of the Plaintiff's subjective statements and testimony:

> The [ALJ] has carefully evaluated the claimant's subjective complaints alleged to render the claimant incapable of working, in accordance with 20 C.F.R. [§] 416.929, Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987) and Social Security Ruling 96-7p. The allegations, as such, cannot be measured qualitatively or quantitatively by objective medical standards and their nature and degree are to be gauged, to a large extent, by the claimant's credibility. It is generally accepted in the medical profession that severe intractable pain, fatigue or stress, continuing for an extended period, will tend to manifest themselves in physical changes such as premature aging, weight loss, impaired gait and weakness in the extremities, progressive physical deterioration and atrophy of associated musculature. Changes of this sort, appropriate to the impairment alleged, do not appear to be present to a significant degree, according to the medical record

11

> in this case. The claimant doubtless experiences some discomfort; however, after carefully considering all relevant evidence, including, but not limited to, the claimant's complaints as stated by the claimant and as reflected in the medical record, current medications, daily activities, medical opinions and reports and the claimant's appearance and actions, the [ALJ] concludes at no time relevant to this decision have the claimant's symptoms been of such intensity, frequency and duration as to be disabling within the meaning of the Social Security Act....The [ALJ] further concludes the claimant's assertions are not deemed sufficiently credible to support a finding that they prevent the claimant from engaging in substantial gainful activity at the light level of exertion.

(TR 17). While the ALJ purportedly evaluated Plaintiff's subjective statements of symptoms and functional ability under the framework set forth in Luna, the ALJ failed to make any findings showing that he actually applied the factors deemed relevant in Luna and its progeny to the credibility determination. Social Security Ruling 96-7p, 1996 WL 374186, at *2, states:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations had been considered" or that "the allegations are (or are not) credible..." The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

(Internal quotations omitted). In the decision in Plaintiff's case, the ALJ erred by not "closely and affirmatively link[ing]" his credibility conclusion with any evidence in the medical record and by entering only "a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

The Tenth Circuit Court of Appeals has condemned the use of similar language by an

12

ALJ. In Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004), the circuit court stated:

> We have held that use of this same boilerplate paragraph is insufficient, in the absence of a more thorough analysis, to support an ALJ's credibility determination as required by Kepler. ...While this boilerplate paragraph does list factors that are appropriate to consider in assessing a claimant's credibility, see Luna, 834 F.2d at 165-66, the ALJ failed to link or connect any of the factors he recited to any evidence in the record. He simply recited these factors, then concluded claimant's allegations were not credible. This is precisely the type of "conclusion in the guise of findings" rejected in Kepler and many cases since; it is not enough for the ALJ simply to list the relevant factors; he must also "explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible." 68 F.3d at 391. We repeat: the use of "[s]tandard boilerplate language will not suffice." Briggs ex rel. Briggs v. Massanari, 248 F.3d 1235, 1239 (10th Cir. 2001). Such boilerplate language fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible."

Id. at 679. Defendant Commissioner's assertion that the ALJ performed an adequate credibility analysis merely because the ALJ referred to the medical record in other parts of the decision is without merit. See Social Security Response Brief, at 3. Defendant Commissioner's alternative attempt to provide a *post-hoc* rationalization for the ALJ's credibility determination is equally deficient. See Social Security Response Brief, at 4. Although the ALJ states that Plaintiff's allegations of fatigue and pain are not supported by objective medical evidence, that basis for discounting the credibility of her statements is insufficient. Hardman, 362 F.3d at 681, citing 20 C.F.R. § 404.1529(c)(2)("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms ... solely because the available objective medical evidence does not substantiate your

13

statements."); Luna, 834 F.2d at 165 ("If objective medical evidence must establish that severe pain exists, subjective testimony serves no purpose at all.").

Because the ALJ failed to link any of the relevant factors he recited to evidence in the record, judicial review of the ALJ's credibility determination is not possible. This Court should refuse to undertake a *post hoc* justification of the Commissioner's decision as such action would violate the general rule first recognized in SEC v. Chenery Corp, 318 U.S. 80, 94-95 (1943). Defendant Commissioner has not suggested that this error is harmless. On this basis, the decision of the Commissioner should be reversed and remanded for further administrative proceedings.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter REVERSING the decision of the Commissioner to deny Plaintiff's application for supplemental security income benefits and REMANDING the case for further administrative proceedings consistent with this Report and Recommendation. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before September 5, 2006, in accordance with 28 U.S.C. §636 and LCvR 72.1. The parties are further advised that failure to file a timely objection to this Report and Recommendation waives their respective right to appellate review of both factual and legal issues contained herein. Moore v. United States, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned

14

Magistrate Judge in the captioned matter.

ENTERED this ___14th___ day of ___August___, 2006.

_____
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE